60 F.3d 717
 ENSLEY BRANCH, N.A.A.C.P.; Donald Nixon; William Moss;
Alvin Mahaffey, Jr.; et al., Plaintiffs,
Birmingham Fire Fighters Association 117; Birmingham
Association of City Employees; et al., Intervenors,
v.
George SEIBELS, individually and as Mayor of the City of
Birmingham, et al., Defendants.
John W. MARTIN; Major Florence; Ida McGruder; Sam Coar;
et al., Plaintiffs,
Birmingham Fire Fighters Association 117; Birmingham
Association of City Employees; Billy Gray; et
al., Intervenors,
v.
CITY OF BIRMINGHAM; George C. Seibels, Jr.; Mayor of
Birmingham; Jefferson County Personnel Board; et
al., Defendants.
UNITED STATES of America, Plaintiff-Appellant,
Birmingham Fire Fighters Association 117; et al., Intervenors,
Robert K. Wilks; James A. Bennett; Floyd E. Click; James
D. Morgan; Joel Alan Day; et al.,
Plaintiffs-Intervenors-Appellants,
v.
JEFFERSON COUNTY, et al., Defendants,
City of Birmingham; and George G. Seibels; et al.,
Defendants-Appellees.
 No. 91-7799.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 14, 1994.
 
 Raymond P. Fitzpatrick, Jr., Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, AL, for appellant.
 Mark T. Waggoner, LaVeeda M. Battle, Gorham, Waldrep, Stewart, Kendrick, Bryant, Battle & Alfano, P.C., Birmingham, AL, for Jefferson County Personnel Bd.
 James P. Alexander, Bradley, Arant, Rose & White, Birmingham, AL, for Richard Arrington, Jr. and the City of Birmingham.
 Miriam R. Eisenstein, Civ. Rights Div., Dept. of Justice, Washington, D.C., Marie K. McElderry, Dennis J. Dimsey, U.S. Dept. of Justice, Frank W. Donaldson, U.S. Atty., Birmingham, AL, for U.S.
 Robert D. Joffe, Cravath, Swaine & Moore, New York City, for Bryant.
 Appeal from the United States District Court for the Northern District of Alabama (Nos. CV74-P-12-S, CV74-P-17-S and CV75-P-666-S); Sam C. Pointer, Jr., Chief Judge.
 ON SUGGESTIONS OF REHEARING EN BANC
 (Opinion August 25, 1994, 11th Cir., 31 F.3d 1548).
 Before TJOFLAT, Chief Judge, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestions of Rehearing En Banc are DENIED.
 
 HATCHETT, Circuit Judge, dissenting:
 
 2
 I respectfully dissent from the court's failure to grant en banc rehearing for this case. This case raises many important issues meriting en banc review, such as:(1) What factual changes must occur before a district court is justified in modifying a consent decree involving racial discrimination, where the discrimination results from the effects of past discrimination?
 
 
 3
 (2) Should consent decrees ending litigation be treated the same as voluntary, race conscious, local government affirmative action programs?
 
 
 4
 (3) What weight must a district court give to statistical disparities between the proportion of minorities a public employer hires and the proportion of minorities willing and able to do the work?
 
 
 5
 (4) To what extent are long term goals allowable in consent decrees between public bodies and minority citizens?
 
 
 6
 (5) Who are "innocents" in terms of a consent decree that provides a remedy for past and present racial discrimination?
 
 
 7
 (6) Do "innocents" have standing to attack the provisions of a consent decree involving remedies for public body racial discrimination?
 
 
 8
 (7) May a consent decree in a public body lawsuit set an annual affirmative action goal greater than the proportion of minorities in the qualified labor pool?
 
 
 9
 (8) May intervenors require the plaintiffs to show, five or ten years after a consent decree has been entered, that the plaintiff class still suffers the effects of racial discrimination?
 
 
 10
 (9) May intervenors challenge a consent decree ordering affirmative action for minorities, five to ten years later, based upon current law?
 
 
 11
 (10) To what degree must a plaintiff class's lawyer change the legal relationship between the plaintiff and the defendant in order to qualify for an award of attorney's fees?
 
 
 12
 In addition, I believe the court has erred in the following respects:
 
 
 13
 1. The Panel's Characterization of the Decrees' Long-term and Annual Goals as Unconstitutional Relies Upon a Misconstruction of Supreme Court Precedent and a Misleading Depiction of the Facts.
 
 
 14
 The panel opinion holds that the district court's modification of the consent decrees' long-term and annual goals is unconstitutionally infirm. But, this finding is based upon an improper construction of Supreme Court precedent and a possible misconstruction of the facts of this case.
 
 
 15
 2. The Pursuit of Racial Parity in the Work Force is not Unconstitutional.
 
 
 16
 The panel concludes that the consent decrees' long-term goals are unconstitutional because they seek "racial parity" based upon the "completely unrealistic assumption that minorities will choose a particular profession in lockstep proportion to their representation in the work force." Ensley Branch, 20 F.3d at 1511, (quoting City of Richmond v. J.A. Croson Co., 488 U.S. 469, 507, 109 S.Ct. 706, 729, 102 L.Ed.2d 854 (1989)). The panel's conclusion is incorrect. Although the City's work force is over fifty percent black, the annual hiring goals automatically terminate once twenty-eight percent of the employees in a particular job classification are black. Alternative conditions, such as the development of lawful employment tests, or the satisfaction of the hiring goals for feeder positions, can similarly terminate the annual hiring goals. In any event, the pursuit of a racially balanced work force is not an unconstitutional endeavor. See Johnson v. Transportation Agency, 480 U.S. 616, 639, 107 S.Ct. 1442, 1455-56, 94 L.Ed.2d 615 (1987) (Supreme Court upholds promotion pursuant to affirmative action plan implemented to achieve a balanced work force); United Steelworkers of Am. v. Weber, 443 U.S. 193, 198, 99 S.Ct. 2721, 2724, 61 L.Ed.2d 480 (1979) (Supreme Court upholds fifty percent hiring goal in order to accelerate hiring of black workers in proportion to their percentage in the local labor pool).*
 
 
 17
 To support its conclusion, the panel relies upon City of Richmond v. J.A. Croson, 488 U.S. 469, 507, 109 S.Ct. 706, 729, 102 L.Ed.2d 854 (1989), where the Supreme Court stated that a minority set-aside program was not narrowly-tailored because it sought no other goal than "racial balancing" and rested "upon the 'completely unrealistic' assumption that minorities will choose a particular trade in lockstep proportion to their representation in the local population."
 
 
 18
 This response misses the mark in several respects. First, the Croson Court expressly noted during its analysis of narrow tailoring "it is almost impossible to assess whether the [minority set-aside plan] is narrowly tailored to remedy prior discrimination since it is not linked to identified discrimination in any way." 488 U.S. at 507, 109 S.Ct. at 729 (emphasis added). Thus, it was in this light that the Supreme Court determined that the only apparent goal of the plan was "outright racial balancing." In this case, no dispute exists that extensive evidence demonstrated discrimination in the City and County's hiring practices. Moreover, the Croson Court also was swayed because of the fact "the city's only interest in maintaining a quota system rather than investigating the need for remedial action in particular cases would seem to be administrative convenience." Croson, 488 U.S. at 508, 109 S.Ct. at 729. Clearly, the Croson decision is readily distinguishable; it involves a situation where the court could not properly find that a set-aside program was narrowly tailored because it was "not linked to identified discrimination in any way." Croson, 488 U.S. at 507, 109 S.Ct. at 729.
 
 
 19
 Second, Croson involved a legislative enactment rather than a court ordered consent decree. In United States v. Paradise, 480 U.S. 149, 107 S.Ct. 1053, 94 L.Ed.2d 203 (1987) the Supreme Court noted that "in determining whether this order was narrowly tailored we must acknowledge the respect owed a district judge's judgement that specified relief is essential to cure a violation of the Fourteenth Amendment. A district court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." Paradise, 480 U.S. at 183, 107 S.Ct. at 1072. Moreover, in Croson the Court emphasized that the civil war amendments embodied in the Fourteenth Amendment were oriented towards limiting the power of the states in acknowledgement of their tendency towards discrimination against blacks. The federal government was charged with enforcing this mandate. See Croson, 488 U.S. at 490-91, 109 S.Ct. at 720 (focusing on the enhanced powers of the federal government in comparison to the states in combating racial discrimination).
 
 
 20
 Thus, the panel erred in holding that the decrees' accelerated relief was unconstitutional.
 
 
 21
 3. The Record Refutes the Panel's Determination that the City Applied the Annual Goals as Rigid Inflexible Quotas.
 
 
 22
 The panel concluded that the decrees' short-term "annual appointment goals have been applied as rigid quotas" and "lack flexibility." Ensley Branch, 20 F.3d at 1516. Again, the record belies this conclusion. The appellees' recount their experience with the decrees as follows:
 
 
 23
 [T]he 50% fire lieutenant goal was in effect for nine calendar years. However, in only two of those years were promotions to fire lieutenant split evenly between blacks and whites. In one year there were no promotions., in two years the 50% goal was exceeded and in four years the City fell short of the 50% annual goal--without consequence. In 1983, for example, the City promoted six whites and three blacks to fire lieutenant, even though the 50% goal was in effect.
 
 
 24
 John W. Martin, et al. and Gwendolyn Bryant, et al.'s Rehearing Petition at 11 (citations omitted).
 
 
 25
 So, the decrees' fifty percent annual hiring goals have indeed been applied flexibly and apparently have in certain situations been waived.
 
 
 26
 Nevertheless, the panel grounded its conclusion that the City implemented its annual goals as "rigid quotas" is an inadvertent mischaracterization of the record. The panel's opinion mistakenly implied that in 1989 the City promoted seven unqualified blacks to fire lieutenant despite the competing candidacy of several "more qualified" whites. This description, however, obfuscates the true facts. Contrary to the panel's inference that demonstrably unqualified black firefighters were promoted, the City simultaneously promoted seventeen white and eleven black firefighters, all of whom the Personnel Board certified as "qualified" for the position. The panel's mistaken assumption that unqualified black employees were promoted over qualified white employees derives from the evaluations of an experimental "Promotional Review Panel" the City developed to rate the relative qualifications of Board-certified candidates for promotion. The City promoted seven black firefighters the Board certified as qualified, but the Review Panel rated the firefighters as marginal at best. Yet, the ratings of the Review Panel were never validated as job-related or without adverse impact. Consequently, the ratings lacked sufficient reliability for a determination of the true relative qualifications of the black and white candidates.
 
 CONCLUSION
 
 27
 Full court consideration would help to authoritatively resolve these issues of exceptional importance.
 
 
 
 *
 Once achieved, however, a racial balance may not be maintained. Weber, 443 U.S. at 208-09, 99 S.Ct. at 2729-30; Johnson, 480 U.S. at 639, 107 S.Ct. at 1455